IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEX BANE** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-2138 |
| | : | |
| **DETECTIVE RICARDO QUILES-ROSA** | : | |
| **AND DETECTIVE JOSEPH GOMES** | : | |

**McHUGH, J.**                                                                                    **March 27, 2025**

### MEMORANDUM

In 2021, Plaintiff Alex Bane was arrested and charged based on a woman's report to police that Mr. Bane threatened her with a weapon because of a debt owed by her boyfriend. After charges were initially brought, Detective Quiles-Rosa acquired partial footage of one of the two interactions between Bane and his accuser. He never disclosed this footage to the District Attorney's Office. Its existence came to light following inquiries from federal authorities, who then shared the videos with Bane's defense counsel. Ultimately, the charges against Bane were dismissed, and he has brought suit against Detective Quiles-Rosa, asserting that his failure to disclose the videos amounted to malicious prosecution. With discovery complete, Defendants move for summary judgment on all counts. Although the detective's methods may not represent ideal police procedure, Mr. Bane cannot prove the elements of a malicious prosecution claim, so Defendants' motion will be granted.

**I.      Relevant Facts**

On December 15th, 2021, Philadelphia police officers responded to a 911 call from Danielle Kochell, who reported that she had been threatened with a gun by Alex Bane twice that day. Affidavit of Probable Cause at 2, ECF 14-3 ("Affidavit"). Ms. Kochell accompanied police to the station, where she was interviewed by Detective Ricardo Quiles-Rosa. *Id.*; *see also* Kochell

Statement, ECF 14-2. Ms. Kochell told Detective Quiles-Rosa that at approximately 3:50 p.m. that day, Mr. Bane had come to the Popeyes restaurant where she worked. Kochell Statement at 1. Mr. Bane was a friend of Ms. Kochell's boyfriend and had lent her boyfriend $5,000. *Id*. In the restaurant, Mr. Bane asked for his money back, and threatened Ms. Kochell and her family if he didn't get paid. *Id*. Ms. Kochell represented that she could tell that Mr. Bane had a gun in the left side of his pants, and towards the end of the conversation Mr. Bane "pulled up his shirt" to show her the gun. *Id*. Upset by this interaction, Ms. Kochell left work early and went home. *Id*. at 2. Around 5:30 p.m., Ms. Kochell was outside her house when Bane purportedly drove up, pointed a gun at her, and made additional threats. *Id*. Ms. Kochell called the police shortly after. *Id*.

Based on this information and Ms. Kochell's photo identification of Mr. Bane, Detective Quiles-Rosa prepared an Affidavit of Probable Cause on December 16th. Affidavit at 1. A magistrate judge issued an arrest warrant for Mr. Bane later that day. Warrant, ECF 14-4. Mr. Bane was arrested and charged by prosecutors on December 20th. Compl. ¶ 6, ECF 1-1. On January 5th, 2022, Ms. Kochell testified at Bane's preliminary hearing, asserting the same version of events as she described in her police statement. *See* Prelim. Hearing Trans. At the hearing, Ms. Kochell further elaborated that, though she was able to tell Mr. Bane had a gun from a bulge on his left side, she only saw the actual gun for two seconds. Prelim. Hearing Trans. 22:3-25:15, 37:17-39:18, 48:12-21, ECF 14-10. At the time of his arrest, Mr. Bane was on federal supervised release and on state probation. *See* ECF 14-5; ECF 14-6.

At some point after Mr. Bane was arrested and charged, but before December 29th, Detective Quiles-Rosa went to the Popeyes to review security footage from the date of the incident. Pl.'s Resp. at 16, ECF 17. Popeyes staff pulled up security footage of a man standing alone and

then talking to an employee around 3:50 p.m. Quiles-Rosa Dep. 57:7-58:14, ECF 14-8 ("Q-R Dep."); Videos, ECF 14-9. Mr. Bane admits that the footage is of him and Ms. Kochell. Bane Dep. 10:23-11:15, ECF 14-7. Because Detective Quiles-Rosa was not trained in recovering video, he did not get a copy of the original video but made four recordings of the footage on his personal cellphone. Q-R Dep. 57:7-58:14; Videos. No gun is visible in the footage, though Mr. Bane is wearing multiple layers of clothing and the left side of his body is blocked from view while he is speaking with Ms. Kochell.

Detective Quiles-Rosa testified that, in his view, these videos had no evidentiary value because they merely showed two people talking – he could not identify who they were or determine whether there was a gun present. *See* Q-R Dep. 58:22-24, 70:11-24, 71:4-15; 91:3-92:9; 95:8-17. As a result, the detective did not provide copies of the videos to the District Attorney's Office ("DAO") or even note the videos in his investigative files. *Id.* 57:1-2, 111:21-112:2. Consequently, neither prosecutors nor Mr. Bane has any way of knowing that these videos existed and were in the personal possession of the detective.

Then, around December 27th, Assistant United States Attorney Michael Miller – the prosecutor involved in Mr. Bane's federal supervised release – reached out to Detective Quiles-Rosa to see if he had any footage from the Popeyes. Q-R Dep. 61:6-62:10. Detective Quiles-Rosa sent AUSA Miller the four videos from his cellphone on December 29th. In early June 2022, AUSA Miller shared these videos with Mr. Bane's defense counsel. *See* July 1, 2022 Hearing Trans. 11:19-20, ECF 14-13 (Bane's defense counsel testifying he received the videos a few days after the last hearing); ECF 14-6 at 3 (showing the last hearing to be June 1, 2022). Around the same time, Mr. Bane received the results of a digital forensics report of his cellphone location that his counsel commissioned. The report concluded that at 5:29 p.m., Mr. Bane's cellphone was

located in deep Southwest Philadelphia along Belmar Terrace, far from Ms. Kochell's home. Digital Forensics Report, ECF 14-12.[1] With the cellphone location data and videos in his possession, Mr. Bane successfully petitioned to vacate his federal detainer and have his state charges thrown out. *See generally* July 1, 2022 Hearing Trans.; *see also* ECF 14-5 at 2.

This suit followed, and the sole remaining claim is malicious prosecution against Detective Quiles-Rosa.[2]

## II. Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Discussion

A plaintiff asserting a Fourth Amendment malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). If a single element is not satisfied, the claim fails. A Pennsylvania malicious prosecution claim is identical, except it

---

[1] The Digital Forensics Reports names "Belmar Street" as the location corresponding with the locational data at 5:29 p.m. However, the latitude and longitude coordinates listed in the report appear to best correspond with an address on Belmar Terrace. Belmar Street and Belmar Terrace are nearby, and both are a significant distance from Ms. Kochell's home at 4946 N. 7th Street.

[2] Plaintiff concedes dismissal as to all claims against Detective Gomes, as well as his Fourteenth Amendment claim against Detective Quiles-Rosa.

does not require a deprivation of liberty. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). Weighing the evidence on the record, I find that no reasonable jury could find Bane's prosecution malicious.

### A. Probable Cause

To prevail on his malicious prosecution claim. Mr. Bane must show that prosecutors would have lacked probable cause to prosecute him if Detective Quiles-Rosa disclosed the video clips to them. *See, e.g., Halsey v. Pfeiffer*, 750 F.3d 273, 300-03 (3d Cir. 2014).

"While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Wright v. City of Phila.*, 409 F.3d 595, 601-02 (3d Cir.2005) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction," *id*. at 602, and it is irrelevant in a probable cause inquiry "whether a person is later acquitted of the crime for which she or he was arrested." *Id*. Probable cause "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). When making a probable cause determination, courts must not isolate evidence but instead "measure the cumulative weight of all of the [available] evidence and account for reasonable inferences that can be drawn from it." *Halsey*, 750 F.3d at 302. In the context of malicious prosecution, "[p]robable cause must exist throughout the duration of the criminal case," not just at the initiation of charges. *See Giddens v. Stewart*, No. 20-1474, 2021 WL 3100188, at *5 (E.D. Pa. July 22, 2021) (Goldberg, J.) (internal citations omitted).

Significantly, Plaintiff concedes that Ms. Kochell's testimony on its own established probable cause for the arrest and initial prosecution. Pl.'s Resp. at 12. Indeed, it is well established

5

that witness testimony alone is sufficient to establish probable cause. *See, e.g., Morrison v. Schultz,* No. 04-5635, 2006 WL 8453955, at *10-11 (E.D. Pa. Dec. 29, 2006) (granting summary judgment because a single eyewitness identification who called the police to report two men with a gun was sufficient to establish probable cause), *aff'd*, 270 F. App'x 111 (3d Cir. 2008); *Pettaccio v. Davis*, No. 02-2098, 2002 WL 32356393, at *4 (E.D. Pa. Oct. 9, 2002) ("The identification of a party as the perpetrator of a crime by a victim or other witness provides ample probable cause to charge that party."), *aff'd*, 76 F. App'x 442 (3d Cir. 2003). This may still be true if the witness's testimony includes discrepancies. *See Greene v. City of Phila.*, No. 97-4264, 1998 WL 254062, at *7 (E.D. Pa. May 8, 1998) (granting defendants summary judgment because probable cause may be based on identification by single eyewitness, "even though the identification may be tarnished by discrepancies in the witnesses' description of the perpetrator."), *aff'd*, 185 F.3d 861 (3d Cir. 1999). As the Court of Appeals previously observed, when a police officer possesses information from "a credible eyewitness . . . a reasonable jury could not find that [he] lacked knowledge of sufficient facts to establish probable cause to arrest." *Merkle*, 211 F.3d at 790.

To surmount the obstacle presented by this precedent, Mr. Bane resorts to an argument that the subsequent discovery of the video negated probable cause when looking at the evidence cumulatively. Pl.'s Resp. at 12. For purposes of assessing the existence of probable cause, that does not include the forensic cell phone analysis, as that did not become available until late May, 2022. The analysis must be limited to whether the videos definitively refuted the accuser's account.

There are four videos. *See* Videos, ECF 14-9. The videos show that Mr. Bane was at the Popeyes at the time of his alleged threat. Two videos – numbered 4228 and 4231 – show Mr. Bane standing alone in the restaurant. This is consistent with Ms. Kochell's statement to police that she

"didn't pay him any mind," kept "doing my normal work," and then "went to the back bathroom to grab something" after Mr. Bane first entered. Kochell Statement at 1, ECF 14-2. The other two videos – numbered 4235 and 4237 – show Mr. Bane and Ms. Kochell speaking near a table.[3] Ms. Kochell testified that, towards the end of their conversation, she saw the gun in the left side of his pants. Kochell Statement at 1; Prelim. Hearing Trans. 38:3-17. However, in these videos, the left side of Mr. Bane's body is obstructed by Ms. Kochell as well as by his puffy coat and sweatshirt. While there is no gun visible in any of the videos, the footage shows that Mr. Bane was wearing many layers of clothing which could have obscured a gun. Ms. Kochell further claims that it was near the end of their conversation when Mr. Bane "pulled up his shirt [] and showed me a small black gun," and that she only saw the gun for two seconds. Kochell Statement at 1; *see also* Prelim. Hearing Trans. 38:3-17. The video clips only cover part of their conversation; they show neither the beginning nor the end of their conversation.

As noted above, Ms. Kochell's statement and later testimony at the preliminary hearing both suffice to establish probable cause.[4] The videos corroborate substantial parts of her testimony, confirming that Mr. Bane was at the Popeyes around 3:50 p.m. that day, spent some time standing alone, and spoke with Ms. Kochell. The remaining aspects of Ms. Kochell's testimony – Mr. Bane's verbal threats and the presence and display of a gun – are neither

---

[3] Video No. 4235 appears to be the security footage played in slow motion, and therefore may be duplicative of video No. 4237.

[4] Typically, courts must evaluate probable cause "charge- by- charge" because, unlike false arrest, a single charge without probable cause will allow a Fourth Amendment malicious prosecution claim to survive. *Chiaverini v. City of Napoleon,* 602 U.S. 556, 562-63 (2024). Here, prosecutors filed seven charges against Mr. Bane related to the events described by Ms. Kochell. *See* ECF 14-14. Because Mr. Bane concedes that probable cause initially existed to prosecute him based on Ms. Kochell's testimony alone, a charge- by- charge analysis is unnecessary.

contradicted nor corroborated by the videos. Plaintiff points to no other evidence contradicting Ms. Kochell's testimony or raising concerns about her credibility. Thus, even considering the videos, the cumulative weight of the evidence still gives rise to probable cause.

Thus, even if the videos had been disclosed, no reasonable jury could conclude that prosecutors lacked probable cause to prosecute Mr. Bane. Based on that alone, summary judgment is warranted.

**B. Malice**

To prevail on a malicious prosecution claim, a plaintiff must also introduce evidence that "the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *McKenna*, 582 F.3d at 461. Under Pennsylvania law, malice may be inferred from an absence of probable cause. *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). Given the existence of probable cause, no inference arises as a matter of law, and it is difficult to discern how the evidence here would logically support an inference of malice.

Plaintiff points to nothing suggesting that the detective had any ill will towards Mr. Bane, believed him actually innocent, or initiated proceedings for an improper purpose. There is no evidence on the record that the Detective ever lied about the existence of the footage. *Compare Johnson v. Sch. Dist. of Phila.*, No. 06-4826, 2008 WL 3927381, at *9 (E.D. Pa. Aug. 21, 2008) (false or incomplete testimony by officer may support malicious intent). In fact, when AUSA Miller contacted him to inquire if any video evidence of the interaction at Popeyes existed, Detective Quiles-Rosa texted him the videos within two days. Q-R Dep. 61:6-10. And in his deposition, Detective Quiles-Rosa testified that he would have shared the videos with the DAO if they had asked for any such evidence. *Id.* 115:24-116:3.

Detective Quiles-Rosa acknowledges that officers have an ongoing duty to provide the DAO with new relevant evidence that is exculpatory or inculpatory, Q-R Dep. 106:21-108:25, but concluded that the video was neither inculpatory nor exculpatory, and as such was not relevant. *See id.* 58:22-24 ("I reviewed [the video recordings], but I didn't see anything of evidentiary value to them. To me, it was just two people having a conversation at Popeyes."); *see also id.* 106:21-107:24.  If the videos significantly changed the probable cause analysis, there might be a basis for questioning the detective's motive or intent, but they largely corroborated the complainant's account and in no respect definitively repudiated it.  The soundness of Detective Quiles-Rosa's assessment is not the issue.  The issue is whether a reasonable jury could infer malice, and I conclude that it could not. Summary judgment is therefore warranted on this additional basis as well.

**IV.      Conclusion**

Because the record does not support two of the required elements of Plaintiff's claim, Defendants are entitled to summary judgment.  An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge